Minute Order Form (06/97)

55-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7384 | **DATE** | 6/7/2001 |
| **CASE TITLE** | International Brotherhood of Electrical Workers Local Union No. 134 vs. Chicago and Northeast Illinois District Council of Carpenters, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Pepper Construction Co.'s motion for summary judgment [20-1] and Defendant Carpenters' motion for summary judgment [25-1] are granted. Defendants' request for attorneys' fees is denied. Plaintiff's motion for summary judgment [23-1] is denied. Judgment is entered in favor of the defendants and against the plaintiffs. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUN 0 8 2001 date docketed | 43 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUN -7 PM 3:31 | |
| RO | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 134, | )<br>)<br>)<br>) |
| Plaintiff, | )   No. 00 C 7384<br>) |
| v. | )   Judge Ruben Castillo<br>) |
| CHICAGO AND NORTHEAST ILLINOIS DISTRICT COUNCIL OF CARPENTERS and PEPPER CONSTRUCTION COMPANY, | )<br>)<br>)<br>) |
| Defendants. | ) |

**DOCKETED**
JUN 0 8 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff International Brotherhood of Electrical Workers, Local Union No. 134, ("IBEW"), brings this action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against Chicago and Northeast Illinois District Council of Carpenters, ("Carpenters"), and Pepper Construction Company, ("Pepper"), seeking to enforce a decision of the Joint Conference Board, ("the JCB"), compelling Pepper to assign certain work to employees represented by IBEW. Carpenters and Pepper assert that the JCB has no jurisdiction over this case and, thus, its decision in this matter should be vacated. All three parties have filed motions for summary judgment. For the reasons stated below, we grant Pepper's and Carpenters' motions for summary judgment, (R. 20-1 and R. 25-1), and deny IBEW's motion for summary judgment, (R. 23-1).

## RELEVANT FACTS

IBEW is a labor organization affiliated with the International Brotherhood of Electrical Workers, AFL-CIO. Carpenters is a labor organization affiliated with the United Brotherhood of

43

Carpenters and Joiners of America, AFL-CIO. Both IBEW and Carpenters were affiliated with the Chicago and Cook County Building and Construction Trades Council, ("Chicago Building Trades Council"), at the time this lawsuit was filed. (R. 34, Carpenters' Resp. to Pl.'s 56.1 Statement of Facts ¶ 15.) Pepper is a general contractor engaged in the building and construction business and is a member of Builders' Association of Greater Chicago, ("BAGC"), as well as Gypsum Drywall Contractors of Northern Illinois, ("GDCNI"). Through its membership in BAGC, Pepper is bound to a collective bargaining agreement with Carpenters. Their collective bargaining agreement originally adopted the Standard Agreement, which was entered into between the Construction Employers' Association and the Chicago Building Trades Council on June 1, 1999 and requires that all jurisdictional disputes be arbitrated by the JCB and that the decisions of the JCB will be binding upon the parties. As of January 1, 1999, Pepper's collective bargaining agreement with Carpenters expressly deleted the use of the JCB as a means of resolving jurisdictional disputes. Pepper is not bound to any collective bargaining agreement with IBEW.

Pepper was the contractor on the job at issue in this case, located at the IKEA Home Center in Schaumburg, Illinois. Part of that job involved the installation of the TEGO (Channel) System, which Pepper assigned to its employees who were represented by Carpenters Local 839, a local affiliate of Carpenters. IBEW claimed to have jurisdiction over the installation of the TEGO (Channel) System, and, in October 2000, IBEW requested a hearing before the JCB concerning this jurisdictional dispute. The JCB advised Pepper and Carpenters of a hearing on November 3, 2000 to consider the dispute. When the JCB asked Pepper and Carpenters whether they were stipulated to the Standard Agreement and the jurisdictional dispute proceedings of the JCB, both responded that they were not. Following the hearing, which neither Pepper nor

Carpenters attended, the JCB determined that the work in question was within the jurisdiction of IBEW and should be assigned to employees represented by IBEW. Because the work was not reassigned, on January 4, 2001, IBEW filed a verified complaint with the JCB seeking a non-compliance determination based on the failure of Pepper and Carpenters to comply with the November 3, 2000 decision of the JCB. The JCB issued a notice of non-compliance hearing for January 22, 2001, but, again, neither Pepper nor Carpenters appeared at the hearing. On January 23, 2001, the JCB issued a decision finding Carpenters to be in non-compliance with the JCB's earlier decision.

On November 22, 2000, IBEW filed a complaint in this Court, seeking to enforce the JCB's November 3, 2000 decision. On February 28, 2001, following the non-compliance hearing, IBEW filed an amended complaint. Currently pending before this Court are Pepper's and Carpenters' motions for summary judgment and IBEW's motion for summary judgment. For the reasons that follow, Pepper's and Carpenters' motions are granted and IBEW's motion is denied.

## ANALYSIS

### I. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor.

*Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 540 (7th Cir. 1998). However, if the evidence is merely colorable, is not significantly probative, or merely raises "some metaphysical doubt as to the material facts," summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 261. When both parties seek summary judgment, the court will "look to the burden of proof that each party would bear on an issue of trial; [the court] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## II. Defendants' Duty to Submit Jurisdictional Dispute to the JCB

The threshold issue in this case is whether Defendants were required to submit this particular dispute to arbitration before the JCB. Case law makes clear that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986) (citations omitted); *Local Union 1393 Int'l Bhd. of Elec. Workers v. Utils. Dist. of W. Ind. Rural Elec. Membership Coop.*, 167 F.3d 1181, 1183 (7th Cir. 1999). In *Sheet Metal Workers Int'l Assn. v. Bridge, Structural & Ornamental Ironworkers*, 495 F. Supp. 326 (C.D. Ill. 1980), the court determined that the employer-defendant was not a party to a plan for the settlement of jurisdictional disputes. The *Sheet Metal Workers* Court explained that

> [a]n employer is bound to the plan only when any one of three circumstances exists, namely: (1) that it had executed a written stipulation to be bound by the plan, or (2) that it is a member of an employer association which had authority to bind its members to the plan and which exercised that authority by a written stipulation to so bind its members, or (3) that it is a signatory to a collective bargaining agreement which contains a provision that jurisdictional disputes be settled by invoking the plan procedures.

4

*Id.* at 328. Thus, we must consider the various contracts and agreements binding on the parties to determine whether or not they had a duty to arbitrate this dispute before the JCB.

### A. Pepper's Duty to Submit to JCB Arbitration

We find that Pepper did not bind itself to arbitration before the JCB in this case. First, when asked by the JCB whether Pepper was stipulated to the Standard Agreement and the jurisdictional dispute proceedings of the JCB in this case, Pepper explicitly stated that it did not so stipulate.

Plaintiff argues, however, that Pepper is bound to the decision of the JCB because of its membership in BAGC and in GDCNI. Through these associations, Pepper entered into collective bargaining agreements with several local building trades unions. Specifically, Pepper assigned its bargaining rights to GDCNI for the purposes of collective bargaining with Painters' District Council No. 14 of the International Brotherhood of Painters and Allied Trades, AFL-CIO. (R. 21, Pepper's 56.1 Statement of Facts ¶ 26.) Furthermore, as a member of BAGC, Pepper is signatory to the collective bargaining agreement between BAGC and several unions, including: (1) Construction and General Laborers' District Council of Chicago and Vicinity, LIUNA, AFL-CIO; (2) International Union of Operating Engineers, Local Union No. 150; (3) Cement Masons, Local Union No. 502; and (4) Technical Engineers Local 130. (*Id.* at ¶¶ 31, 36; R. 37, Pepper's Resp. to IBEW's 56.1 Statement of Facts ¶ 34.) In these collective bargaining agreements, Pepper agreed to be bound by the JCB regarding settlement of all jurisdictional disputes. Thus, IBEW argues, the jurisdictional dispute between IBEW and Defendants also must be submitted to the JCB.

Pepper, however, argues that these collective bargaining agreements with other unions do not bind it to arbitration before the JCB in the instant matter. We agree. Pepper cannot be

5

required to submit a dispute to arbitration in the absence of an agreement to do so. *See AT&T Tech.*, 475 U.S. at 649. In this case, Pepper did not even have a collective bargaining agreement with IBEW. *Laborers' Int'l Union v. W.W. Bennett Constr. Co.*, 686 F.2d 1267, 1274 (7th Cir. 1982)) ("Arbitration of labor controversies is wholly consensual, drawing its very existence from the agreement of the parties."). As support for arbitration in this case, IBEW points to the seemingly expansive language in the collective bargaining agreements with other unions, requiring "all jurisdictional disputes" to be submitted to the JCB. (*See* R. 17, Pl.'s Mot. for Summ. J. at 13.) IBEW, however, is not a signatory to any of these collective bargaining agreements. In fact, IBEW has not pointed to any language in those collective bargaining agreements that demonstrates that Pepper is obligated to submit to the JCB's jurisdiction even in circumstances not covered by the agreements. Instead, as Pepper asserts, the language in the agreements regarding jurisdictional disputes is clearly meant to pertain only to disputes between the contracting parties regarding work covered by the agreements. (*See, e.g.*, R. 19, Pepper's Answer to Count I of Pl.'s Am. Compl., Ex. A, Operating Engineers Building Agreement, Art. I, § 3; Ex. B, Painters' Agreement, Art. III, § 6; Ex. C, Laborers Building Agreement, Art. XVII, ¶ 1.) Thus, Pepper's collective bargaining agreements with other unions, negotiated through its membership in various associations, did not bind it to arbitration before the JCB in this case.[1]

---

[1] IBEW points out that Pepper benefitted under its collective bargaining agreements with the other unions that incorporate the Standard Agreement because IBEW did not picket Pepper or engage in another job site action that could have disrupted the work. IBEW does not explain, however, how refraining from picketing created an obligation on Pepper's behalf to submit to the JCB's jurisdiction. Furthermore, as Pepper notes, any picketing by IBEW over an assignment of work dispute would have been an unlawful secondary boycott under Section 8(b)(4)(D) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(D). (*See* R. 36, Pepper's Resp. at 9.); *Laborers' Int'l*, 686 F.2d at 1277 ("If an employer is threatened by a strike or other coercive action taken to force the employer to make a contrary work assignment, the employer may file an unfair labor practice charge under § 8(b)(4)(D) of the National Labor Relations Act, 29 U.S.C.

Finally, the parties agree that Pepper does not have a collective bargaining agreement with IBEW. IBEW, however, points to the collective bargaining agreement between Pepper and Carpenters, which, prior to January 1, 1999, adopted the Standard Agreement requiring arbitration by the JCB. IBEW argues that Defendants' attempt to delete that reference was insufficient to deny the JCB jurisdiction in this case. This argument is unavailing. The collective bargaining agreement between Defendants specifies the method of dispute resolution for "any dispute as to the proper interpretation of this Agreement," to which IBEW is *not* a signatory. As Pepper points out in its response, there is no dispute between the signatories to this agreement: Carpenters and Pepper both agree that the work in question properly is assigned by Pepper to its own carpenter employees. (R. 36, Pepper's Resp. at 14.) Thus, we find that IBEW has not demonstrated that Pepper agreed to submit this dispute to the JCB.

IBEW's final argument, raised in its reply and response brief, (R. 35), is that Pepper's failure to appeal the JCB's decisions limits this Court's review of those decisions. We disagree. Under Section 301 of the Labor Management Relations Act, the courts have jurisdiction in the first instance to determine whether or not there is an agreement to arbitrate. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). As noted earlier, the duty to arbitrate arises from contract. *AT&T Tech.*, 475 U.S. at 648. Therefore, "a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so *a fortiori*, it cannot be compelled to arbitrate if an arbitration clause does not bind it at all." *Wiley & Sons, Inc. v. Livingston*, 376

§ 158(b)(4)(D).").

U.S. 543, 547 (1964) (quoted in *Laborers' Int'l*, 686 F.2d at 1275). Furthermore, the Standard Agreement makes clear that a party's appearance before the JCB is tantamount to accepting the jurisdiction of the JCB and agreeing to be bound by its decisions. (R. 12, Am. Compl., Ex. A, Standard Agreement, Art. VII, ¶ 10.) Thus, Pepper and Carpenters properly preserved their threshold jurisdictional objections by asserting them before the JCB and declining to appear before the JCB.

**B. Carpenters' Duty to Submit to JCB Arbitration**

Carpenters concedes that, if Pepper were bound to arbitration, it too would be bound because of its membership in the Chicago Building Trades Council. (R. 25-2, Mem. Supporting Carpenters' Mot. for Summ. J. at 8.). On the other hand, Carpenters argues, in this case, because Pepper is not bound, neither is it bound to arbitration. IBEW does not argue that Carpenters could be bound to arbitration even if Pepper is not. In the instant case, because we have determined that Pepper is not bound by the Standard Agreement, the JCB is not the proper forum for resolving the instant dispute involving the three parties. *Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Freeman Constr. Co.*, No. C83-2853A, 1985 WL 6038, at *3 (N.D. Ohio May 10, 1985) (holding that where all the parties to the action were not bound by any decision of the jurisdictional dispute board, that forum was not a viable option for resolving the dispute); *Sheet Metal Workers*, 495 F. Supp. at 331 (granting summary judgment for defendant-employer, as well as defendant-union, where court found that defendant-employer was not a party to a plan calling for settlement of jurisdictional disputes by impartial jurisdictional disputes board). Thus, we will not enforce the JCB's decision directing Pepper to award the work in

question to IBEW.[2]

### III. Attorneys' Fees

Both Pepper and Carpenters request attorneys' fees in the event that summary judgment is entered in their favor. Generally, attorneys' fees are not recoverable under federal law in the absence of statutory or contractual provisions or certain equitable considerations such as the bad faith of a party. *See Summit Valley Indus., Inc. v. Local 112, United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 721 (1982). This case is brought pursuant to 29 U.S.C. § 185, which does not provide for fee shifting. Furthermore, we earlier determined that there is no contractual relationship between IBEW and Defendants. Pepper argues that, although it is not bound to the Standard Agreement with IBEW, it qualifies as a third party beneficiary under that contract and, thus, can recover its attorneys' fees and costs. Pepper quotes the Standard Agreement, which provides that "[t]he prevailing party in any enforcement proceeding shall be entitled to recover its costs and attorneys fees from the non-prevailing party," (R. 12, Am. Compl., Ex. A, Standard Agreement, Art. VIII, ¶ 11), as support that the Standard Agreement manifests an intent to confer a benefit on it as the third party beneficiary, *i.e.*, "the prevailing party." *Ahern v. Bd. of Educ.*, 133 F.3d 975 (7th Cir. 1998) and *Gen. Elec. Capital v. Equifax Servs.*, 797 F. Supp. 1432 (N.D. Ill. 1992), which Pepper cites to support its request for attorneys' fees do not dictate that we award attorneys' fees in this case. Instead, these cases merely stand for the proposition that

---

[2] We note Carpenters' claim that this dispute may have been properly brought before the respective International Unions with which IBEW and Carpenters are affiliated. IBEW argues that Carpenters' failure to appear before the JCB to assert this argument precludes its consideration by this Court on the issue of arbitrability. (R. 35, Pl.'s Reply and Resp. to Defs.' Mots. for Summ. J. at 10.) We need not decide whether the dispute could have been referred to the International Unions for settlement, and we only decide today whether the JCB's decision must be enforced.

9

"parties not in privity to a contract may only sue to enforce the contract when the language of the contract clearly manifests an intent by the contracting parties to confer a direct benefit on the third party." *Gen. Elec.*, 797 F. Supp. at 1445 (citations omitted). *See Ahern*, 133 F.3d at 983. In the Standard Agreement, there is no indication that the contract refers to a third party beneficiary at all. Instead, the Standard Agreement's reference to "the prevailing party" logically refers to whichever signatory to the contract prevailed, not to a third party beneficiary.

Finally, having examined the record, we do not find this case to be so extraordinary that attorneys' fees are warranted to further the interests of justice. Although Defendants prevailed, nothing in the record indicates that IBEW brought its claims in bad faith or on frivolous grounds. Accordingly, we deny Defendants' request for attorneys' fees.

## CONCLUSION

For the foregoing reasons, we grant Defendants Pepper's and Carpenters' motions for summary judgment. (R. 20-1 and R. 25-1.) We deny Defendants' request for attorneys' fees. (*Id.*) We deny IBEW's motion for summary judgment. (R. 23-1.) We instruct the Clerk of Court to enter judgment in favor of Defendants Pepper and Carpenters and against Plaintiff IBEW, pursuant to Fed. R. Civ. P. 58.

Entered:

Judge Ruben Castillo
United States District Court

June 7, 2001